# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>ARMANDO ALEXIS MARTINEZ,<br><br>    Defendant. | Case No. 19CR3402-H<br><br>ORDER DENYING DEFENDANT'S APPEAL OF THE MAGISTRATE JUDGE'S DECISION TO TERMINATE DEFENDANT FROM THE APS DIVERSION PROGRAM<br><br>(Doc. No. 78.) |

Pending before the Court is Defendant Armando Alexis Martinez's ("Defendant") appeal of the Magistrate Judge's decision to terminate him from the Alternatives to Prison Solutions ("APS") Diversion Program. (Doc. No. 78.) The Government has filed a response in opposition to the Defendant's appeal. (Doc. No. 81.) For the reasons set forth below, the Court denies the Defendant's appeal and affirms the Magistrate Judge's decision.

## Background

On September 19, 2019, the Defendant, with his consent, tendered a guilty plea before the Magistrate Judge, the Honorable Karen S. Crawford, to transportation of aliens for financial gain and aiding and abetting in violation of Title 8 U.S.C. §§ 1324(a)(1)(A)(ii), (v)(II) and (a)(1)(B)(i) as charged in Count 1 of the Information.[1]

---

[1] Prior to the Defendant's plea of guilty, the Defendant was released on bond subject to the certain condition of pretrial release. (Doc. Nos. 8 and 25.)

(Doc. Nos. 27 and 30.) The Defendant executed a written plea agreement and voluntarily entered into the APS Diversion Program. (Doc. Nos. 31 and 32.) The Magistrate Judge issued her Findings and Recommendation recommending that this Court accept the Defendant's guilty plea and confirm the Defendant's entry into the APS Diversion Program. (Doc. No. 33.) On September 30, 2019, this Court adopted the Magistrate Judge's Findings and Recommendation, accepted the Defendant's guilty plea, confirmed his entry into the APS Diversion Program, and referred any matters arising from the pretrial diversion program to the Magistrate Judge. (Doc. No. 34.) The APS Diversion Program provides for the dismissal of the Defendant's criminal charges after a period of at least one year of compliance with all the required conditions as set forth in the APS Diversion Program Agreement.[2] (Doc. Nos. 31 and 32.) If the Defendant is terminated from the APS Diversion Program, the Defendant is placed back in the normal progress of his criminal case and awaits sentencing before the district judge assigned to the case. (Id.)

On November 13, 2019, the United States Pretrial Services Office ("Pretrial Services") filed a petition for an order to show cause ("OSC") why the Defendant should not be terminated from the APS Diversion Program based on allegations that he violated certain conditions of his pretrial release. (Doc. No. 44.) The Magistrate Judge signed the petition and the Defendant was cited to appear before the Magistrate Judge on the OSC. (Id.) Thereafter, on November 25, 2019, Pretrial Services submitted an amended petition for an OSC based on additional allegations that the Defendant violated the terms of his pretrial release. (Doc. No. 46.) The Magistrate Judge agreed to include the additional allegations on the OSC. (Id.) On November 26, 2019, the Defendant appeared before the Magistrate Judge to address the OSC. (Doc. No. 47.) The Defendant was arraigned on the amended petition and the Defendant admitted allegations 1, 2 and 3, which include the use of marijuana and failure to

---

[2] The Court need not recite all the terms of the APS Diversion Program in this order as those terms are set forth in the APS Diversion Program Agreement. (See Doc. No. 32.)

reside at a facility as directed by Pretrial Services. (Doc. Nos. 46 and 47.) The Magistrate Judge addressed the violations, ordered the Defendant to remain in the APS Diversion Program, and set the next hearing for December 19, 2019. (Doc. No. 47.)

On December 19, 2019, the Magistrate Judge conducted a pretrial diversion hearing. (Doc. No. 48.) At the hearing the Magistrate Judge ordered the Defendant to report to CRASH, a residential drug treatment program facility. (Id.) On December 20, 2019, Pretrial Services submitted a petition for an OSC based on allegations that the Defendant again violated the terms of his pretrial release. (Doc. No. 49.) The Magistrate Judge signed the petition and ordered a warrant for the Defendant's arrest. (Id.) The Defendant was arrested and appeared before the duty magistrate judge for his initial appearance on the OSC on January 7, 2020. (Doc. No. 52.) The duty magistrate judge set the Defendant's next court date for January 14, 2020 before Magistrate Judge Crawford, who has been supervising the Defendant's compliance with the APS Diversion Program. (Id.) Thereafter, on January 13, 202020, Pretrial Services submitted an amended petition for an OSC based on additional allegations that the Defendant violated the terms of his pretrial release. (Doc. No. 55.) The Magistrate Judge agreed to include the additional allegations on the OSC and address the new allegations at the next hearing. (Id.)

On January 14, 2020, the Defendant appeared before Magistrate Judge Crawford and admitted the allegations contained in the amended petition, which include failure to submitted to psychological/psychiatric treatment, failure to submit to drug and alcohol testing, use of marijuana, and failure to enter the CRASH residential drug treatment program. (Doc. Nos. 55 and 56.) The Defendant remained in custody and the Magistrate Judge set another pretrial diversion hearing for January 24, 2020. (Doc. No. 55). On January 24, 2020, the Magistrate Judge allowed the Defendant to remain in the APS Diversion Program and ordered the Defendant to complete the CRASH program once a bed space becomes available at the residential drug treatment

program facility. (Doc. No. 57.)

On April 15, 2020, the parties filed a joint motion to modify the conditions of the Defendant's pretrial release and to release the Defendant from custody. (Doc. No. 60.) Magistrate Judge Crawford granted the parties' joint motion and ordered that the Defendant be released on April 16, 2020 to Pretrial Services. (Doc. Nos. 61 and 62.) Thereafter, the Magistrate Judge set the next hearing for May 13, 2020. ((Doc. No. 64.) On May 13, 2020, the Defendant appeared before the Magistrate Judge for a pretrial diversion hearing and the Magistrate Judge ordered the Defendant to remain in home detention with GPS monitoring. (Doc. No. 65.) The next hearing was set for June 10, 2020. (Id.)

On June 10, 2020, the Defendant appeared telephonically before the Magistrate Judge and the next hearing was scheduled for July 8, 2020. (Doc. No. 66.) On July 8, 2020, the Defendant appeared before the Magistrate Judge and the next hearing was scheduled for August 5, 2020. (Doc. No. 67.) On August 5, 2020, the Defendant appeared before the Magistrate Judge and the next hearing was set for September 2, 2020. (Doc. No. 68.)

On September 2, 2020, the Defendant failed to telephonically appear for the pretrial diversion hearing and the Magistrate Judge continued the hearing to September 30, 2020. (Doc. No. 69.) On September 21, 2020, Pretrial Services submitted a petition for an OSC based on allegations that the Defendant again violated the terms of his pretrial release. (Doc. No. 70.) The Magistrate Judge signed the petition and the Defendant was cited to appear before the Magistrate Judge on the OSC. (Id.) On September 30, 2020, the Defendant was arraigned on the petition and admitted the allegations contained in the petition which include the allegation that he used marijuana and the allegation that he attempted to falsify his drug test. (Doc. No. 71.) The Magistrate Judge took the matter under submission and set another hearing for October 28, 2020. (Id.)

On October 27, 2020, Pretrial Services submitted an amended petition for an

OSC alleging that the Defendant again used marijuana. (Doc. No. 73.) The Magistrate Judge signed the amended petition and agreed to arraign the Defendant on the additional allegation. (Id.) On October 28, 2020, the Defendant was arraigned on the amended OSC petition and, after denying the allegation, was found to have violated the terms of his pretrial release. (Doc. No. 74.) Accordingly, the Magistrate Judge terminated the Defendant from the APS Diversion Program and set a hearing to appoint new counsel for the Defendant. (Id.)

On November 3, 2020, the Magistrate Judge appointed new counsel for the Defendant and advised the Defendant that he had 14 days to file an appeal of the Magistrate Judge's decision to this Court. (Doc. No. 75.) On November 9, 2020, defense counsel filed a motion for an extension of time to file an appeal and on November 10, 2020, this Court granted the Defendant's motion for good cause. (Doc. Nos. 76 and 77.) On November 8, 2020, the Defendant timely filed his appeal and the Court ordered the Government to file a response. (Doc. Nos. 78 and 79.) On December 24, 2020, the Government filed its response in opposition to the Defendant's appeal. (Doc. No. 81.)

## Applicable Law and Legal Standard

A defendant has no right to be placed or remain in a pretrial diversion program. United States v. Hicks, 693 F.2d 32, 34 (5th Cir. 1982); United States v. Richardson, 856 F.2d 644, 647 (4th Cir. 1988); See also United States v. Nathan, 816 F.2d 230, 234 (6th Cir. 1987) ("There is no basis in this case for judicial interference with the prosecutor's discretion and authority to decide whether or not to pursue pretrial diversion."). Rather, a defendant's entry into a pretrial diversion program is a benefit offered solely at the discretion of the Government.[3] Hicks at 34; See also United States v. Fokker Servs. B.V., 818 F.3d 733, 747 (D.C. Cir. 2016) (Holding that a district court may not curb the Government's decision to permit a party to participate

---

[3] "[P]rosecutorial discretion is not totally unfettered [and] [t]he government may not selectively prosecute a defendant based upon arbitrary classifications such as race or religion, or the exercise of constitutional rights." Richardson at 647.

in pretrial diversion.); United States v. Constantino, 738 F. App'x 556 (9th Cir. 2018) (unpublished) (citing United States v. Edmonson, 792 F.2d 1492, 1497 (9th Cir. 1986)) ("The decision to offer a defendant a pretrial diversion agreement in a given case rests squarely with the prosecutor."). Accordingly, in the context of pretrial diversion matters, federal courts are limited to deciding "disputes about whether a party has breached a pretrial diversion agreement" and "ensur[ing] that a [d]efendant enters into a pretrial diversion agreement knowingly and voluntarily." United States v. Adams, 281 F. Supp. 3d 622, 623 (M.D. La. 2017) (Jackson, C.J.); See also United States v. Snead, 822 F. Supp. 885, 887 (D. Conn. 1993) (Eginton, J.) ("Judicial review in the area of pretrial diversion is more limited than review of a probation revocation, but pretrial programs are not insulated from judicial review. A court has the power to decide whether the government has lived up to its side of the bargain in terminating the pretrial agreement.").

Under Title 28 U.S.C. § 636(b) and Rule 59 of the Federal Rules of Criminal Procedure, a district judge reviews a magistrate judge's decision on nondispositive matters for any part of the decision that is clearly erroneous or contrary to law, and reviews *de novo* a magistrate judge's decision on dispositive matters.[4] Furthermore, Rule 59 defines a dispositive matter as "a defendant's motion to dismiss or quash an indictment or information, a motion to suppress evidence, or any matter that may dispose of a charge or defense." It is clear that the Magistrate Judge's decision to terminate the Defendant from the APS Diversion Program does not fall under first two categories (motions to dismiss and motions to suppress evidence) defining what constitutes a dispositive matter under Rule 59. Additionally, termination from a pretrial diversion program does not constitute as a "matter that may dispose of a charge or defense" because terminating a defendant from a pretrial diversion program does not dispose of the criminal charges but merely returns a defendant back to the normal track of a criminal prosecution, and such termination does not dispose of any

---

[4] The parties did not address the appropriate standard of review to be applied in this matter.

defenses because a defendant does not lose any defenses from being terminated from the pretrial diversion program and does not have a right to be placed or remain in such a program. Moreover, the terms of APS Diversion Program Agreement prohibits the Government from using any statements the Defendant makes to the Magistrate Judge, Pretrial Services Officer, or treatment providers in connection with the APS Diversion Program in its case-in-chief. (Doc. No. 32 at 3.) See also United States v. Palazzo, No. CR 05-0266, 2007 WL 9734138 (E.D. La. Oct. 24, 2007) (Lemmon, J.) (Holding that "the pretrial diversion itself and the pretrial diversion agreement are not admissible [under Rule 404(b) of the Federal Rules of Evidence.]"); United States v. Jenkins, 952 F.2d 404, 1992 WL 5434 (6th Cir. 1992) (unpublished) ("We hold that the district court committed reversible error by allowing the government to cross-examine [the defendant] on the pretrial diversion agreement, in the manner it did, when the government had agreed before trial that it would not introduce that evidence."). Accordingly, the correct standard to apply when reviewing a magistrate judge's decision to terminate a defendant from a pretrial diversion program is to decide whether a magistrate judge's decision is clearly erroneous or contrary to law.[5]

## Discussion

The Defendant essentially argues that the Court should reverse the Magistrate Judge's decision based on the Defendant's upbringing, the collateral consequences of a federal felony conviction on the Defendant's future, and the Defendant's current educational and employment opportunities. (Doc. No. 78.) Most, if not all, the Defendant's arguments rely on the Defendant's history and characteristics, and do not address how the Magistrate Judge's decision to terminate the Defendant from the APS Diversion Program was clearly erroneous or contrary to law.

The Government argues that the Defendant has been given multiple chances to

---

[5] In Hicks, the Fifth Circuit applied the clearly erroneous standard when reviewing the district court's finding that the defendant violated the terms of his pretrial diversion agreement but noted that "[s]ince pretrial diversion is a program administered by the Justice Department, considerations of separation of powers and prosecutorial discretion might mandate an even more limited standard of review." Id at 34 n.1.

comply with the terms of the APS Diversion Program Agreement. (Doc. No. 81.) The Government points out that the Defendant provided no legal or factual reason to reverse the Magistrate Judge's decision and that the Defendant's arguments are best suited for consideration at the time of sentencing under the Title 18 U.S.C. § 3553(a) factors. (Id). Moreover, the Government urges this Court to uphold the Magistrate Judge's decision as a reversal would "damage the integrity of the program and create a disparate impact to the other few Defendants who regrettably have been also terminated from the Program." (Id at 4.)

The Court agrees with the Government. The Defendant's repeated violations even after multiple chances to comply with the terms of the APS Diversion Program does not warrant reversing the Magistrate Judge's decision and there is nothing in the record to suggest that the Magistrate Judge's decision was clearly erroneous or contrary to law. The terms of the APS Diversion Program Agreement states that repeated violations of the pretrial release conditions may result in the Defendant's termination from the pretrial diversion program. (Doc. No. 32 at 4-6.) Moreover, the APS Diversion Program Agreement warns that dishonesty on the Defendant's part will result in enhanced sanctions. (Id.) Despite these warnings, the Defendant continued to violate the terms of his pretrial release and even attempted to falsify his drug test results. Even after the Defendant's admission that he attempted to falsify his drug test results, the Magistrate Judge judiciously took the matter under submission to mull over the appropriate sanction for the Defendant's conduct. (Doc. No. 71.) The record is clear that Magistrate Judge Crawford demonstrated the utmost patience in conducting these pretrial diversion proceedings and applied gradual sanctions for each violation as contemplated by the APS Diversion Program Agreement. Accordingly, the Court concludes that the Magistrate Judge's decision to terminate the Defendant from the APS Diversion Program was neither clearly erroneous nor contrary to law. See Hicks at 34 ("We think that the government is entitled to hold the defendant to strict compliance with the terms of the agreement.").

Furthermore, had *de novo* review been the appropriate standard to apply, the Court would still conclude that terminating the Defendant from the APS Diversion Program would be the appropriate sanction for violating the terms of the APS Diversion Program Agreement based on the Defendant's multiple violations and, most concerning to this Court, his attempt to falsify his drug test results which runs afoul of the candor required for the pretrial diversion program. See e.g. United States v. DeFilippis, 637 F.2d 1370, 1372 (9th Cir. 1981) (Noting that the defendant's "case was referred to the pretrial diversion program, but the Probation Office eventually determined that she was ineligible because of misrepresentations she made regarding her criminal history.").

Finally, the Defendant's arguments that the Court should reverse the Magistrate Judge's decision based on the Defendant's personal history and the consequences of a federal felony conviction on the Defendant's record are unconvincing based on the record before the Court and unwarranted under the law. The Defendant was given multiple opportunities to take advantage of a benefit offered only to a small percentage of defendants prosecuted in this district. This Court has sentenced numerous other defendants with backgrounds similar to the Defendant and those other defendants have never been offered the chance to participate in the pretrial diversion program and are facing the consequences of a federal felony conviction on their record. Nevertheless, the Defendant's arguments are best suited for consideration under the § 3553(a) factors at the time of sentencing.

## Conclusion

After review of the record and the parties' arguments, the Court concludes that the Magistrate Judge's decision to terminate the Defendant from the APS Diversion Program was neither clearly erroneous nor contrary to law. Furthermore, had *de novo* review been the appropriate standard to apply, the Court would conclude that terminating the Defendant from the pretrial diversion program would be the appropriate sanction based on the Defendant's conduct during the pretrial diversion

period. Accordingly, the Court DENIES the Defendant's appeal and AFFIRMS the Magistrate Judge's decision to terminate the Defendant from the APS Diversion Program.

    IT IS SO ORDERED.

    DATED: December 30, 2020

HONORABLE MARILYN L. HUFF
UNITED STATES DISTRICT JUDGE

Copy to: Honorable Karen S. Crawford
         United States Magistrate Judge